SECOND DIVISION
FEBRUARY 1, 2011

No. 1-10-0436

| | | |
|---|---|---|
| QUICKCLICK LOANS, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellant, | ) | Cook County |
| | ) | |
| | ) | |
| v. | ) | No. 08 MI 180139 |
| | ) | |
| | ) | |
| MELODY A. RUSSELL, | ) | Honorable |
| | ) | Kathleen Pantle, |
| Defendant and Counterplaintiff-Appellee. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Karnezis and Connors concurred in the judgment and opinion.

## OPINION

Plaintiff QuickClick Loans, LLC, initiated collection proceedings against defendant,

Melody Russell, alleging that Russell had defaulted under a loan agreement and promissory note

agreed to by the parties. Russell filed a counterclaim for herself and a putative class of similarly

situated Illinois consumers against QuickClick alleging violations of the Truth in Lending Act (15

U.S.C. §1601 *et seq.* (2006)), Regulation Z (12 C.F.R. §226.1 *et seq.* (2008)), the Illinois

Consumer Installment Loan Act (205 ILCS 670/1 *et seq.* (West 2008))*,* and the Illinois Interest

Act (815 ILCS 205/1 *et seq.* (West 2008)). QuickClick then filed a motion to compel arbitration

and stay proceedings, which the circuit court denied. QuickClick appeals.

No.1-10-0436

We affirm the judgment of the circuit court, finding that the agreement between the parties to arbitrate allows for only two organizations to administer any dispute between the parties in arbitration, neither of which was available. The two exclusive administrators were unavailable due to external constraints, and therefore, the arbitration agreement between the parties was impossible to enforce. Additionally, we find that an alternative administrator cannot be named by this court because the designation by the parties of two exclusive arbitration organizations was an integral part of the agreement between the parties.

## JURISDICTION

On January 14, 2010, the circuit court denied QuickClick's motion to compel individual arbitration and to stay the proceedings. On February 9, 2010, QuickClick filed its interlocutory appeal. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 307(a)(1) governing interlocutory appeals as of right. Ill. S. Ct. R. 307(a)(1) (eff. Feb. 26, 2010).

## BACKGROUND

On December 2, 2006, Russell obtained a loan from QuickClick by executing a loan agreement and a promissory note. The loan agreement contained an arbitration provision, titled "Arbitration Agreement."[1] The Arbitration Agreement states that either party may require the claim to be arbitrated. It defines what claims are covered, how to start the arbitration, and which of two predetermined arbitration organizations may be selected. The sections of the Arbitration

---

[1] Russell had the opportunity to reject the Arbitration Agreement by submitting a written objection to QuickClick within 15 days of signing the promissory note. Russell did not reject the Arbitration Agreement and does not contest the Arbitration Agreement's subsequent incorporation into the loan agreement and promissory note.

2

Agreement that are at the center of the parties' dispute state in relevant part:

"b. *What Claims Are Covered*: 'Claim' means any claim dispute or controversy between you and us that in any way arises from or relates to the Note. 'Claim' has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). *** It also includes disputes about the validity, enforceability, arbitrability or scope of this Arbitration Agreement or the Note *** However, we will not choose to arbitrate an individual Claim that you bring against us in small claims court or your state's equivalent court, if any. But if that Claim is transferred, removed or appealed to a different court, we then have the right to choose arbitration.

c. *How Arbitration Is Started*: Either you or we may require any Claim to be arbitrated. Arbitration is started by giving written notice to the other party of the intent to start or compel arbitration. This notice may be given before or after a lawsuit has been started over the Claim or with respect to other Claims brought later in the lawsuit. The notice may be in the form of a motion or

petition to compel arbitration. Arbitration of a Claim must comply with this Arbitration Agreement and, to the extent not inconsistent or in conflict with this Arbitration Agreement, the applicable rules of the arbitration administrator.

> d. *Choosing the Administrator: The party requiring arbitration must choose one of the following arbitration organizations as the Administrator: American Arbitration Association ('AAA'), *** or National Arbitration Forum ('NAF'), ***. In all cases, the arbitrator(s) must be a lawyer with more than 10 years of experience. If for any reason the chosen organization is unable or unwilling or ceases to serve as the Administrator, the party requiring arbitration will have 20 days to choose a different Administrator consistent with the requirements of this Arbitration Agreement*." (Emphasis added)

If the parties choose arbitration, they are prohibited from participating in a class action in court or a class-wide arbitration under the Arbitration Agreement. Additionally, the Arbitration Agreement states that it is governed by the Federal Arbitration Act (Act)(9 U.S.C. § 1 *et seq.* (2006).

On July 17, 2009, the NAF, one of the two administrators permitted under the Arbitration Agreement, entered a consent judgment with the State of Minnesota for the purpose of requiring

"the complete divestiture by the NAF entities of any business related to the arbitration of consumer disputes." Pursuant to this consent judgment, the NAF ceased administering consumer arbitrations, including the counterclaim in this case. After the NAF ceased administering consumer arbitrations, the AAA issued a moratorium on consumer debt collection arbitrations. The AAA posted a notice on its Web site describing which claims the moratorium covered, the time frame of the moratorium, and the reasons for the moratorium. Specifically, the notice, in relevant part, states:

> "Matters included in this moratorium are: consumer debt collections programs or bulk filings and individual case filings in which the company is the filing party and the consumer has not agreed to arbitrate at the time of the dispute and the case involves *** a consumer finance matter.
>
> The AAA will continue to administer all demands for arbitration filed by consumers against businesses, and all other types of consumer arbitrations."

The notice states the moratorium will be in effect until the "AAA determines that adequate and broadly acceptable due process protocols specific to these cases are in place."

On November 6, 2008, QuickClick began collection proceedings against Russell alleging that she had defaulted under the loan agreement and promissory note. In its complaint, QuickClick sought judgment against Russell in the amount of $980.48, plus the costs of the suit.

On January 29, 2009, a default judgment was entered against Russell. On March 3, 2009, the circuit court granted Russell's motion to vacate the January 29, 2009, default judgment and to quash service of the complaint. On March 4, 2009, Russell filed a counterclaim for herself and a putative class of similarly situated Illinois consumers against QuickClick alleging violations of the Truth in Lending Act (15 U.S.C. §1601 *et seq.* (2006)), Regulation Z (12 C.F.R. §226.1 *et seq.* (2008)), the Illinois Consumer Installment Loan Act (205 ILCS 670/1 *et seq.* (West 2008))*,* and the Illinois Interest Act (815 ILCS 205/1 *et seq.* (West 2008)). On March 6, 2009, QuickClick filed a citation to discover assets, which the circuit court dismissed without prejudice on March 11, 2009.

On July 24, 2009, QuickClick filed its motion to compel arbitration of Russell's counterclaims and to stay proceedings pending the completion of arbitration. In its motion, QuickClick asserted that the Act applies to this case and that Russell's counterclaims fall within the scope of the Arbitration Agreement between the parties. QuickClick further argues that under the Arbitration Agreement of the loan, Russell's counterclaims must be arbitrated on an individual, as opposed to a class action, basis. QuickClick named the AAA as the administrator for the requested arbitration. Russell responded that arbitration is impossible in this case because under the Arbitration Agreement, the parties must choose either the NAF or the AAA, both of which were unavailable. Specifically, the NAF was unavailable due to its settlement agreement to not participate in consumer arbitrations and the AAA was unavailable because QuickClick's claims fall within the AAA's moratorium on consumer arbitrations. Russell also responded that QuickClick waived its arbitration rights and that the alleged class action waiver is unenforceable.

6

In its reply, QuickClick agreed that the NAF could not administer the arbitration, but contended that the AAA could because the AAA moratorium on new consumer debt collection arbitration filings, where the company is the filing party and the consumer has not agreed to arbitration, did not apply to the parties.

On January 14, 2010, the circuit court entered a written order denying QuickClick's motion to compel arbitration. The circuit court found that "the Parties' agreement to arbitrate falls within the purview of the [Act]; however, legal constraints external to the Parties' agreement forecloses the arbitration of Russell's Counterclaims." The circuit court reasoned that the Arbitration Agreement limited the parties' choices of arbitrators to either the NAF or the AAA, neither of which was able to administer the arbitration. The circuit court found that the AAA moratorium applied to the parties, because QuickClick was the filing party for purposes of arbitration. The circuit court rejected QuickClick's argument that the Arbitration Agreement allows parties 20 days to select a non-AAA or NAF arbitrator where both are unable to serve as administrator, instead finding that the Arbitration Agreement is clear that the parties can choose only the AAA or the NAF, not a third-party administrator. The circuit court similarly rejected QuickClick's argument that section 5 of the Act allows QuickClick to petition the circuit court to name an alternative administrator. The circuit court ruled that section 5 of the Act does not apply in the instant case because the parties' specific designation of an exclusive arbitration forum, either the AAA or the NAF, was "an integral part of the arbitration clause in the agreement."

On January 19, 2010, counsel for QuickClick sent a letter to the AAA asking the AAA to confirm QuickClick's belief that the AAA moratorium on consumer debt collection matters does

not apply to the parties. On January 20, 2010, counsel for Russell sent a letter to the AAA urging the AAA to take no action on QuickClick's letter or, in the alternative, to reject the arguments QuickClick put forth in its January 19, 2010, letter. On March 23, 2010, counsel for the AAA acknowledged receiving both parties' communications and stated:

> "Although the [AAA] has not taken any action in response to the request that we present our views on the applicability of the debt collection arbitration moratorium as it relates to the above referenced litigation, I wanted to confirm our position on the matter. After reviewing the parties' communications, attached documents and transcripts, it is apparent that the applicability of the moratorium has been thoroughly litigated. As such, absent mutual agreement of the parties or a direction from a court to do so, it would be innappropriate for the AAA to become involved in this matter."

On February 9, 2010, QuickClick timely filed its notice of interlocutory appeal pursuant to Supreme Court Rule 307(a) seeking reversal of the circuit court's January 14, 2010, order denying its motion to compel arbitration and to stay proceedings. Ill. S. Ct. R. 307(a)(1) (eff. Feb. 26, 2010).

## ANALYSIS

On appeal, QuickClick argues the circuit court erred by denying its motion to compel

arbitration and stay the proceedings. Specifically, QuickClick argues that the AAA's moratorium does not apply to this case because Russell, as the filer of the counterclaim, initiated the arbitration. QuickClick further argues that under the Arbitration Agreement, the AAA and the NAF are not the exclusive arbitration administers. Finally, QuickClick argues that the circuit court erred in finding that section 5 of the Act (9 U.S.C. §5)(2006)) does not apply in this case. For these reasons, in addition to QuickClick's position that the Arbitration Agreement contains a class action waiver, QuickClick argues that this court should compel Russell to submit to arbitration on an individual, non-class-action basis.

Russell replies that arbitration in this case is impossible because the Arbitration Agreement clearly bars selection of an arbitrator other than the AAA or the NAF, both of which are unavailable. Specifically, the NAF is unavailable because it no longer arbitrates consumer debt arbitrations and the AAA is unavailable because of its self-imposed moratorium. Russell asserts that the AAA moratorium applies to the parties because QuickClick is the filing party for purposes of arbitration. Russell also argues that QuickClick should not be entitled to rewrite the Arbitration Agreement in order to choose an alternative administrator under section 5 of the Act. 9 U.S.C. §5 (2006). Russell claims an alternative administrator is forbidden under the Arbitration Agreement based on the express language of the agreement requiring that an administrator "consistent with the requirements of this Arbitration Agreement" be selected. In the alternative, Russell argues that QuickClick has waived its right to arbitrate due to its inconsistent conduct. Specifically, that QuickClick sought to litigate its collection claims in circuit court, but force Russell to submit to arbitration. Russell additionally argues that both the Arbitration Agreement

and the purported class action waiver in the loan agreement are unconscionable and contrary to public policy.

Typically, review of interlocutory appeals is conducted under an abuse of discretion standard. *Vassilkovska v. Woodfield Nissan, Inc.,* 358 Ill. App. 3d 20, 24 (2005)(citing *Peregrine Financials & Securities v. Hakakha,* 338 Ill. App. 3d 197, 202 (2003)). However, where the circuit court did not hold an evidentiary hearing and based its decision on a purely legal analysis, the applicable standard of review of the circuit court's decision is *de novo. Id.* See also *Czarnik v. Wendover Financial Services,* 374 Ill. App. 3d 113, 116 (2007) ("where the trial court made no factual findings and its decision was based purely on a question of law, the decision to deny [a] motion to compel arbitration is reviewable *de novo*"). In addition, issues of contractual construction and statutory construction are reviewed *de novo. Avery v. State Farm Mutual Automobile Insurance Co.,* 216 Ill. 2d 100, 129 (2005) ("the construction, interpretation, or legal effect of a contract" is a question of law, and, thus, appellate review is *de novo*); *Weather-Tite, Inc. v. University of St. Francis,* 233 Ill. 2d 385, 389 (2009) (issues of statutory construction are reviewed *de novo*). In this interlocutory appeal, we must determine "whether there was a sufficient showing to sustain the circuit court's order denying the motion to compel arbitration." *Vassilkovska,* 358 Ill. App. 3d at 24.

It is well established that agreements to submit to arbitration, as an alternative method of dispute resolution, are favored at both the state and federal level. *Board of Managers of the Courtyards at the Woodlands Condominium Ass'n v. IKO Chicago, Inc.*, 183 Ill. 2d 66, 71 (1998). Congress passed the Act to "overcome the historical reluctance of courts to enforce

agreements to arbitrate" and with the intent to "place such agreements on the same footing as other contracts." *Carter v. SSC Odin Operating Co.,* 237 Ill. 2d 30, 41 (2010). The Act applies to both state and federal courts. *Perry v. Thomas,* 482 U.S. 483, 489 (1987).

Although arbitration is favored, an agreement to submit to arbitration is a matter of contract. *Salsitz v. Kreiss,* 198 Ill. 2d 1, 13 (2001). Parties to an agreement to arbitrate disputes "are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language." *Id.* Thus, "[a]n arbitration agreement will not be extended by construction or implication." *Id.* Unambiguous contract terms must be given their plain and ordinary meaning. *Barth v. State Farm Fire & Casualty Co.,* 228 Ill. 2d 163, 174 (2008). To determine whether arbitration should be compelled, a court must first determine whether the arbitration agreement reached the statutory issues. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985). If the arbitration agreement does reach the statutory issues, then a court must determine whether any "legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.*

The plain language of the Arbitration Agreement makes clear that if a party requires arbitration, it must choose either the NAF or the AAA. The Arbitration Agreement states "the party requiring arbitration *must* choose one of the following arbitration organizations as the Administrator: *** AAA *** or *** NAF." (Emphasis added.) This term is unambiguous and, thus, must be given its plain meaning. See *Barth*, 228 Ill. 2d at 174. The Arbitration Agreement also makes clear that "[i]f for any reason the chosen organization is unable or unwilling or ceases

11

to serve as the Administrator, the party requiring arbitration will have 20 days to choose a different Administrator *consistent with the requirements of this Arbitration Agreement.*" (Emphasis added.) This term is also unambiguous and its plain language directs the parties to select an alternative administrator consistent with the terms of the agreement. In order to be consistent with the terms of the agreement, the parties "must choose" either the AAA or the NAF.

In this case, neither the AAA nor the NAF was available to perform the arbitration. The parties agree that the NAF is unavailable, but dispute whether the AAA is available. The AAA moratorium, however, clearly states that it will not participate in any consumer debt collection programs "in which the company is the filing party and the consumer has not agreed to arbitrate at the time of the dispute and the case involves *** a consumer finance matter." Under the moratorium, QuickClick is the filing party because it both sought the arbitration and filed the initial complaint before the circuit court in this matter in November of 2008. Russell, as the consumer, has not agreed to the arbitration. QuickClick seeks to litigate its claims in court while forcing Russell to take her counterclaims to arbitration. Therefore, because QuickClick was the filing party for both the initial dispute and the arbitration claim, the AAA moratorium applies to the parties in this case.

Although the parties agreed to arbitration, the exclusive administrators, as outlined in the Arbitration Agreement, are not available to arbitrate the matter. Therefore, external events to the parties' agreement have foreclosed the arbitration of the parties' claims, and thus the circuit court could not enforce the Arbitration Agreement. See *Mitsubishi Motors Corp.,* 473 U.S. at 628 (a court must determine whether any "legal constraints external to the parties' agreement foreclosed

12

the arbitration of those claims").

QuickClick also argues that under section 5 of the Act a substitute arbitrator should be appointed. Section 5 of the Act allows a court to appoint an arbitrator where there is a "lapse in the naming of an arbitrator." 9 U.S.C. §5 (2006). In *Carr v. Gateway, Inc.*, our supreme court analyzed an arbitration agreement that designated the NAF as the sole arbitral forum for any disputes between the parties, and provided for penalties for disputes brought before non-NAF forums. *Carr v. Gateway, Inc.*, No. 109485, slip op. at 4 (Ill. Feb. 3, 2011). The court held that, "section 5 of the Act may be applied to name a substitute arbitrator where the parties' designated arbitral forum fails, *unless* the designation of the arbitral forum *is integral to the parties' agreement to arbitrate.*" (Emphasis added). *Id.* at 9. The court reasoned that "[w]here the designation of an arbitral forum is only an ancillary, logistical concern and the primary consideration is the intent to arbitrate disputes" a substitute arbitrator may be selected under section 5 of the Act. *Id.* The court concluded that the designation of the NAF as the arbitral forum was integral to the arbitration agreement between the parties. *Id.* at 14.

As discussed above, it is clear that the Arbitration Agreement in this case exclusively designates either the NAF or the AAA as the only administrators that may be chosen. The plain language of the Arbitration Agreement cannot be read as supporting any other conclusion. It cannot be said that the designation of the NAF or the AAA was an ancillary or a logistical concern. The Arbitration Agreement states that the parties "must choose" either the NAF or the AAA. The plain language of the Arbitration Agreement does not mention any other fora but, rather, specifically directs the parties that they "must choose" either the NAF or the AAA. The

No.1-10-0436

language in the Arbitration Agreement is clear that the designation of the NAF or the AAA is an integral part of the Arbitration Agreement. Due to our finding in this case, we need not address Russell's waiver or public policy arguments.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

14