Corrected

2021 IL App (1st) 201264

No. 1-20-1264

Opinion filed March 16, 2021

SECOND DIVISION

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| LAIAH ZUNIGA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County. |
| | ) | |
| MAJOR LEAGUE BASEBALL, | ) | No. 20 L 4684 |
| | ) | |
| Defendant-Appellant | ) | The Honorable |
| | ) | Kathy M. Flanagan, |
| (Chicago Cubs Baseball Club, LLC, Respondent in | ) | Judge Presiding. |
| Discovery-Appellant). | ) | |
| | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1    In this interlocutory appeal, the defendant, Major League Baseball (MLB), and the respondent in discovery, Chicago Cubs Baseball Club, LLC (Cubs), challenge the trial court's order denying their motion to compel binding arbitration of a personal injury claim that the plaintiff, Laiah Zuniga, filed in the Circuit Court of Cook County. For the following reasons, we affirm the order of the trial court.

¶ 2                                   I. BACKGROUND

¶ 3          This personal injury case arises out of an incident that occurred on August 27, 2018, when the plaintiff was hit in the face by a foul ball while attending a Chicago Cubs baseball game at Wrigley Field. The supporting record indicates that the plaintiff obtained entry to Wrigley Field by presenting a paper ticket created by the Cubs' ticket office. She had been given the ticket earlier that day by her father, who won it in a raffle at his workplace. The front of the ticket included artwork depicting one of the Cubs players; information about the opponent, the date and time of the game, the seat location, and ticket price; a barcode; and small print that stated, "Event date/time subject to change. No refund. No exchange. Subject to terms/conditions set forth on the reverse side."

¶ 4          On the reverse side of the ticket, approximately one-third of the space was devoted to an advertisement. The remaining space contained six paragraphs of fine print. The first paragraph stated, "By using this ticket, ticket holder (*'Holder'*) agrees to the terms and conditions available at www.cubs.com/ticketback (the *'Agreement'*), also available at the Chicago Cubs administrative office. Key terms of the Agreement are summarized below (the Agreement controls in the event of any conflict)." (Emphases in original). The third paragraph began with the word "WARNING," used all boldface type, and included a sentence in all capital letters that baseballs might be hit into the stands, that spectators should stay alert, and that the Cubs and other entities would not be liable for resulting injuries. The fifth paragraph, in regular type, stated, "Any dispute/controversy/claim arising out of/relating to this license/these terms shall be resolved by binding arbitration, solely on an individual basis, in Chicago, Illinois. Holder and Cubs agree not to seek class arbitration or class claims and the arbitrator(s) may not consolidate more than one person's claims."

¶ 5          In an affidavit in the supporting record, the plaintiff averred that she had never read the fine

print on the back of a ticket to a baseball game, although she had noticed advertisements. She stated that had only ever referenced tickets for game day and seating information. She averred that she had only ever attended baseball games for any team at the invitation of someone else or after receiving tickets as a gift, and she had never personally purchased tickets to a baseball game. She averred that she had never read any ticket terms and conditions, and she had never visited the website at www.cubs.com/ticketback.

¶ 6     The supporting record further indicates that the full terms and conditions that were available on the Cubs' website at www.cubs.com/ticketback and at the Chicago Cubs administrative office on the day at issue included a far more comprehensive mandatory arbitration provision than what was on the back of the ticket. That provision stated in full as follows:

"*MANDATORY ARBITRATION AGREEMENT & CLASS ACTION WAIVER*
*('ARBITRATION AGREEMENT')*

The Cubs care deeply about maintaining good relationships with fans. If you have a problem with your ticket and/or those of Minor(s) or the Event, a telephone call to customer service may resolve the matter quickly and amicably. Any dispute not resolved informally must be resolved in accordance with this Arbitration Agreement.

Unless prohibited by federal law, Holder and the Cubs agree to arbitrate any and all claims and disputes relating in any way to Holder's purchase or use of this ticket and/or those of Minor(s), Holder's and/or Minor(s)' participation in, attendance at, and/or observation of the Event, the Agreement, and any related dealings between them, including, without limitation, claims of bodily injury or property damage arising out of Holder's and/or Minor(s)' attendance at and/or participation in the Event ('*Arbitration Claims*'), except for Arbitration Claims concerning the validity, scope or enforceability of this Arbitration Agreement, through *BINDING INDIVIDUAL ARBITRATION*. This

Arbitration Agreement involves interstate commerce and shall be governed by the Federal

Arbitration Act, 9 U.S.C. §§ 1-16 ('FAA'), and not by state law.

In any Arbitration Claim to be resolved by arbitration, neither Holder nor the Cubs

will be able to have a court or jury trial or participate in a class action or class arbitration.

Other rights that Holder and the Cubs would have in court will not be available or will be

more limited in arbitration, including the right to appeal. Holder and the Cubs each

understand and agree that by requiring each other to resolve all disputes through individual

arbitration, *WE ARE EACH WAIVING THE RIGHT TO A COURT OR JURY TRIAL. ALL*

*DISPUTES SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS, AND NOT AS A*

*CLASS ACTION, REPRESENTATIVE ACTION, CLASS ARBITRATION OR ANY*

*SIMILAR PROCEEDING.* The arbitrator(s) may not consolidate the claims of multiple

parties.

Arbitrations shall be administered by the American Arbitration Association ('AAA')

pursuant to the applicable AAA rules in effect at the time the arbitration is initiated. You

may obtain information about arbitration, arbitration procedures and fees from AAA by

calling 800-778-7879 or visiting www.adr.org. If AAA is unable or unwilling to arbitrate

a dispute, then the dispute may be referred to any other arbitration organization or arbitrator

the parties both agree upon in writing or that is appointed pursuant to section 5 of the FAA.

The arbitration shall take place in the city where the Ballpark is located. The arbitrator shall

be authorized to award any relief that would have been available in court, provided that the

arbitrator's authority is limited to Holder and the Cubs alone, except as otherwise

specifically stated herein. No arbitration decision will have any preclusive effect as to non-

parties. The arbitrator's decision shall be final and binding. The parties agree that this

Arbitration Agreement extends to any other parties involved in any Arbitration Claims, including, but not limited to, Minor(s) and the Released Parties. This Arbitration Agreement shall take precedence over the rules of the arbitration organization or arbitrator in the event of any conflict.

The Cubs will be responsible for paying all arbitration fees other than the amount of filing fees Holder would have incurred in the state or federal court where the Event took place, whichever is less. Notwithstanding any other provision herein, Holder and the Cubs may seek relief in a small claims court for Arbitration Claims within its jurisdiction. In addition, Holder and the Cubs each may exercise any lawful rights to seek provisional remedies or self-help, without waiving the right to arbitrate by doing so. Notwithstanding any other provision of the Agreement, if the foregoing class action waiver and prohibition against class arbitration is determined to be invalid or unenforceable, then this entire Arbitration Agreement shall be void. If any portion of this Arbitration Agreement other than the class action waiver and prohibition against class arbitration is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this Arbitration Agreement. This Arbitration Agreement will survive the termination of the Agreement, the conclusion of the Event, and/or the bankruptcy or insolvency of a party (to the extent permitted by applicable law).

YOU HAVE THE RIGHT TO REJECT THIS ARBITRATION AGREEMENT, BUT YOU MUST EXERCISE THIS RIGHT PROMPTLY. If you do not wish to be bound by this agreement to arbitrate, you must notify us by mailing a written opt-out notice, postmarked within seven (7) days after the date of the Event. You must send your request to: Chicago Cubs Baseball Club, LLC, Attn: Office of the General Counsel, Re: Arbitration

Opt Out, 1060 West Addison Street, Chicago, IL 60613. The request must include your full name, address, account number, and the statement 'I reject the Arbitration Agreement contained in my Event Ticket.' If you exercise the right to reject arbitration, the other terms of the Agreement shall remain in full force and effect as if you had not rejected arbitration.

Prior to initiating a lawsuit or an arbitration proceeding under this Arbitration Agreement, the Claimant shall give the other party or parties written notice of the Arbitration Claim (a 'Claim Notice') and a reasonable opportunity, not less than 30 days, to resolve the Arbitration Claim. Any Claim Notice to one or more of the Cubs shall be sent by mail to Chicago Cubs Baseball Club, LLC, Attn: Office of the General Counsel, Re: Arbitration Claim, 1060 West Addison Street, Chicago, IL 60613. Any Claim Notice must (a) identify the Claimant by name, address, email address, and telephone number; (b) explain the nature of the Arbitration Claim and the relief demanded; and (c) be submitted only on behalf of the Claimant, and not on behalf of any other party. The Claimant must reasonably cooperate in providing any information about the Arbitration Claim that the other party reasonably requests and must give the other party a reasonable opportunity to respond to the demand for relief.

*IF MINOR(S) IS/ARE ACCOMPANYING HOLDER TO THE EVENT, HOLDER IS DEEMED TO HAVE AGREED TO THIS ARBITRATION AGREEMENT ON BEHALF OF SUCH MINOR(S) AS THEIR PARENT OR GUARDIAN OR AS THE AUTHORIZED AGENT OF THEIR PARENT OR GUARDIAN. IF HOLDER DOES NOT WISH TO OR IS NOT AUTHORIZED TO MAKE SUCH AGREEMENT ON BEHALF OF THE ACCOMPANIED MINOR(S), HOLDER SHOULD IMMEDIATELY LEAVE THE BALLPARK WITH THE MINOR(S).*" (Emphases in original).

¶ 7        According to the plaintiff's affidavit, she was sitting at her seat at the ballpark, eating a sandwich that she had purchased there, when she was struck in the face by a foul ball traveling at a high rate of speed. She sustained serious injuries to her head and face, including facial fractures. She spent four days hospitalized and then returned home, where she continued to rest and take pain medication as ordered by her physician. During that time, she did not engage in reading or any other eye-straining activity, pursuant to her doctor's orders. She could not work for a period of two weeks after being injured. She averred that prior to hiring a lawyer, she was unfamiliar with the word "arbitration," and that if she had known that it meant she lost her right to pursue a jury trial in court for her injuries, she would have understood to opt out of the arbitration provision within seven days of the event in which she was injured. She also averred that she had no "account number" with MLB or the Cubs as required to complete the opt-out process.

¶ 8        After the plaintiff filed the complaint at law in circuit court, MLB and the Cubs filed a motion to compel binding arbitration of the plaintiff's claim. The motion itself is not included in the supporting record. The plaintiff filed a response, in which she did not dispute that a contract existed between herself and the Cubs. Instead, she first argued that the arbitration provision was inapplicable because the Cubs were named only a respondent in discovery in the case and MLB was neither a party to the agreement nor a third-party beneficiary of it. Second, she argued that the terms and conditions of the ticket and the arbitration provision were unconscionable and unenforceable because they were set forth on the ticket in tiny type that did nothing to highlight the importance of the arbitration provision or need to visit a separate website to ascertain the full terms and conditions being agreed to. She argued that it was too onerous to expect a ticketholder to notice the website address on the ticket and then use a device with Internet access to find and read the full text of the terms and conditions.

¶ 9        In a written order, the trial court rejected the plaintiff's first argument, finding that the arbitration agreement applied to MLB. However, the trial court accepted the plaintiff's second argument and found that the arbitration provision was procedurally unconscionable because it was so difficult to find, read, or understand that it could not fairly be said that the plaintiff was aware of what she was agreeing to. The trial court's reasoning for its determination is explained in greater detail in the analysis below. Based on the trial court's finding of procedural unconscionability with respect to the arbitration provision, the trial court denied the motion by MLB and the Cubs to compel arbitration. MLB and the Cubs then filed this interlocutory appeal of the trial court's order.

¶ 10                                    II. ANALYSIS

¶ 11       This appeal involves the denial of a motion to compel arbitration. We first address the standard of review. The plaintiff argues that this court should review the trial court's order for abuse of discretion, asserting that the trial court made factual findings and resolved disputed facts in determining that the arbitration provision was procedurally unconscionable. However, we agree with the contention of MLB and the Cubs that a *de novo* standard of review is appropriate because the trial court denied the motion to compel arbitration without conducting an evidentiary hearing, the underlying facts were not in dispute, and the trial court's order involved applying the law to undisputed facts. *QuickClick Loans, LLC v. Russell*, 407 Ill. App. 3d 46, 52 (2011). Further, this appeal involves the question of whether a contract provision is unconscionable, which is a question of law reviewed *de novo*. *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 22 (2006).

¶ 12       The issue in this appeal is whether the arbitration provision upon which MLB and the Cubs rely, which is included in the terms and conditions as set forth on the Cubs' website or at its administrative office and is summarized on the reverse side of the paper ticket used by the plaintiff, is unenforceable under the doctrine of procedural unconscionability. We are not deciding the

broader question of whether the plaintiff entered into a contract with the Cubs by using the ticket to enter Wrigley Field to attend the baseball game. The plaintiff did not dispute the issue of contract formation in the trial court, and therefore, we limit our review to the question of the unconscionability of a specific provision of the parties' contract.

¶ 13        We begin by acknowledging that contractual agreements to submit disputes to arbitration are favored as a matter of both state and federal law. *QuickClick Loans, LLC*, 407 Ill. App. 3d at 52. However, arbitration is a matter of contract, and a party cannot be forced to arbitrate a dispute that the party has not agreed to submit to arbitration. *Roubik v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 181 Ill. 2d 373, 382 (1998). The question of whether parties to a dispute have contractually agreed to submit that dispute to arbitration is determined according to principles of state contract law. *Bess v. DirecTV, Inc.*, 381 Ill. App. 3d 229, 234 (2008). An arbitration agreement may be invalidated by a state law contract defense of general applicability, such as fraud, duress, or unconscionability. *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 18.

¶ 14        The trial court here relied upon the doctrine of procedural unconscionability to find that the arbitration provision here was unenforceable. A contract term can be invalidated on the basis of "substantive" unconscionability, "procedural" unconscionability, or a combination of both. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 99 (2006). Substantive unconscionability exists when contract terms are inordinately one-sided in one party's favor. *Id.* at 100. Procedural unconscionability exists when a contract term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware that he or she was agreeing to it. *Kinkel*, 223 Ill. 2d at 22. The doctrine has been explained as follows:

        " 'Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice. [Citations.] Factors to be

considered are all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print; both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive factors in determining the issue of unconscionability. [Citation.] To be a part of the bargain, a provision limiting the defendant's liability must, unless incorporated into the contract through prior course of dealings or trade usage, have been bargained for, brought to the purchaser's attention or be conspicuous. *** Nor does the mere fact that both parties are businessmen justify the utilization of unfair surprise to the detriment of one of the parties ***. [Citation.] This requirement that the seller obtain the knowing assent of the buyer "does not detract from the freedom to contract, unless that phrase denotes the freedom to impose the onerous terms of one's carefully drawn printed document on an unsuspecting contractual partner. Rather, freedom to contract is enhanced by a requirement that both parties be aware of the burdens they are assuming. The notion of free will has little meaning as applied to one who is ignorant of the consequences of his acts." [Citations.]' " *Id.* at 23-24 (quoting *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 989-90 (1980)).

The doctrine protects individual consumers who contract with commercial entities at least as much as it protects businesses that contract with other businesses. *Id.* at 24.

¶ 15        Factors making a court more likely to find unconscionability include the involvement of a consumer, a disparity in bargaining power, and the presence of the allegedly unconscionable provision on a preprinted form. *Id.* However, as MLB and the Cubs point out, a provision contained in a consumer contract will not be found procedurally unconscionable merely because a

business sought to impose it through a standardized, take-it-or-leave-it contract over which the consumer had no ability to negotiate (*i.e.*, a contract of adhesion). *Zobrist v. Verizon Wireless*, 354 Ill. App. 3d 1139, 1148 (2004). Likewise, a provision will not be found procedurally unconscionable merely because it is presented in fine print or uses legal language that an average consumer might not fully understand. *Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214, 233 (2008). Contracts with these characteristics are "a fact of modern life." *Kinkel*, 223 Ill. 2d at 26. "Consumers routinely sign such agreements to obtain credit cards, rental cars, land and cellular telephone service, home furnishings and appliances, loans, and other products and services," without those characteristics giving rise to a finding of procedurally unconscionability. *Id.*; *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 72 (2011). Rather, there must be "[s]ome added coercion or overreaching" beyond these characteristics for a court to find that a contractual provision is procedurally unconscionable. *Tortoriello*, 379 Ill. App. 3d at 233. Also, even an arbitration clause that is difficult to find or hidden in a maze of fine print may still be considered part of the parties' bargain if it is brough to the consumer's attention, either elsewhere in the contract or by other means. *Id.*

¶ 16    The doctrine of procedural unconscionability has been applied by the supreme court to invalidate a clause in a car warranty excluding consequential damages, based on evidence showing that the warranty was printed only in the car's owner manual located inside the car's glovebox and unavailable to the plaintiff until after she signed the purchase contract for the car. *Razor*, 222 Ill. 2d at 100-01. In *Kinkel*, the supreme court held that an arbitration clause included in the fine print of the terms and conditions on the back of a preprinted cellular service agreement filled with text was not procedurally unconscionable, where the plaintiff had signed the contract, initialed an acknowledgement on it that she had read its terms and conditions, and had those terms and

conditions in her possession to read if she had chosen to do so. *Kinkel*, 223 Ill. 2d at 26. However, the court did find a "degree of procedural unconscionability" in the fact that key information about the costs of the arbitration was not explained in the contract, but rather the contract merely incorporated this information by reference through a statement that information about costs was available " 'upon request.' " *Id.* at 27.

¶ 17 In *Frank's Maintenance & Engineering*, 86 Ill. App. 3d at 991-92, the doctrine was applied outside the consumer context to invalidate a provision on the back of a purchase acknowledgement limiting the remedies available to purchasers, where a notice on the front of the purchase acknowledgement directing purchasers to the conditions on the back had been stamped over, rendering it illegible and indicating that it could be disregarded. In *Timmerman v. Grain Exchange, LLC*, 394 Ill. App. 3d 189, 196-97 (2009), the doctrine was used to prevent the defendants from relying on a trade association rule to compel arbitration, where their contracts with the plaintiffs (who were not members of the trade association) stated that the contracts were subject to those rules but did not mention arbitration or set forth the rules; the plaintiffs were also not given copies of the trade association rules or told where they could be found. In *Wigginton v. Dell, Inc.*, 382 Ill. App. 3d 1189, 1193-94 (2008), the court found that a provision prohibiting class arbitration of disputes was "at least somewhat procedurally unconscionable," where a plaintiff who purchased computer equipment by telephone had not seen Dell's terms and conditions prior to purchasing it, and returning the equipment to reject the provision after receiving it was far more onerous than choosing beforehand to purchase from a different supplier.

¶ 18 Thus, in each of the above cases where procedural unconscionability was found, in whole or in part, there was some factor that made the relevant contract term difficult or onerous for the non-drafting party to find or obtain at the time of contracting, such that it could not fairly be said that

the non-drafting party to the contract was aware of what he or she was agreeing to.

¶ 19    In this case, the trial court found that the arbitration provision upon which MLB and the Cubs relied was procedurally unconscionable and unenforceable, based upon the following factors: (1) the plaintiff did not purchase the ticket, and she did negotiate or bargain for the terms of the agreement; (2) the type on the front of the ticket directing the ticketholder to the terms and conditions on the back was "inconspicuous and very difficult to see"; (3) the type used in the summary of terms on the back of the ticket was "extremely small and difficult to read"; (4) the summary of the terms and conditions on the back of the ticket discussed a variety of topics and addressed arbitration only at the bottom without separating, bolding, or setting that provision apart in any way; (5) the extent of the summary of the arbitration provision was a statement that " 'any dispute/controversy/claim arising out of/relating to this license/these terms shall be resolved by binding arbitration, solely on an individual basis' "; and (6) the top of the back of the ticket stated that the ticket holder agreed to the terms in conditions available on the website without stating that the full arbitration agreement was located there or referencing the website again near the bottom of the ticket where arbitration is addressed. The trial court concluded that the arbitration provision was effectively "hidden in a maze of fine print, unable to be appreciated by the Plaintiff." The trial court found that the circumstances surrounding the agreement and the size and location of the portion addressing arbitration "raise significant doubts as to whether the Plaintiff had a meaningful opportunity to become aware of, let alone agree to, the terms of the arbitration clause."

¶ 20    On appeal, MLB and the Cubs argue that the trial court erred in finding that the arbitration provision was procedurally unconscionable. They argue that the trial court placed too much emphasis on the small size of the type used on the ticket. They contend that, despite being in small type, the notice on the front of the ticket and the terms and conditions summarized on the back of

it (and available in full on the Cubs website) used clear and simple language and were legible and conspicuous enough to afford the plaintiff a reasonable opportunity to review and understand what she was agreeing to. They rely on the fact that the front of the ticket contained only two lines of text, which they argue was clear and conspicuous enough to put the plaintiff on notice that her attendance at Wrigley Field was "[s]ubject to terms/conditions set forth on the reverse side." They contend that the agreement was not hidden in a maze of fine print, citing the fact that the first full sentence of the back of the ticket stated that by using the ticket, she was agreeing to the terms and conditions available on the Cubs website. They point out that the back of the ticket contained fewer than 650 words, that more than 50 of them were directed to the topic of arbitration, and that the topic is spelled out in a separate paragraph. They argue that neither the notice on the front of the plaintiff's ticket nor the terms and conditions summarized on the back were in any way illegible or misleading.

¶ 21    We agree with the conclusion reached by the trial court and hold that the arbitration provision at issue is procedurally unconscionable. As with the cases discussed above, factors exist in this case that make the arbitration provision difficult or onerous to find or obtain at the time of using the ticket, such that we cannot fairly say that the plaintiff was aware of what she was agreeing to. Principal among these factors is the fact that the paper ticket possessed by the plaintiff did not contain the actual terms and conditions of the contract, but merely contained a summary of the terms and conditions and informed ticket holders that they had to either access a website or visit the Cubs' administrative offices to obtain and read the full terms and conditions they were purportedly agreeing to, including the 8-paragraph arbitration provision. And the context in which a ticket holder is being directed to do this is not one where he or she is already using the Internet and can merely click on a hyperlink to access and read those terms and conditions. Instead, a ticket

holder, who is quite likely in the commotion outside the baseball stadium at the time he or she looks at the ticket, would then need to use a device to access the Internet, manually type in the website address, and then read on that device terms and conditions that, when printed, comprise four-and-a-half single-spaced pages of the supporting record. The need to take these extra steps in the context of attending a baseball game greatly diminishes the ease with which a ticketholder can actually read the arbitration provision to which he or she is purportedly agreeing by using the ticket. Also, a ticket-holder may not even have a cellular phone with Internet access or coverage sufficient to access the Internet at the ballpark, and the option to obtain the full terms and conditions from the Cubs' administrative office would seem even more onerous than accessing a website, since the ticket does not inform the ticketholder where that office may be found.

¶ 22        The likelihood that a ticket holder will actually find, obtain, and read the full arbitration provision by accessing the Cubs' website or visiting the administrative office is diminished even further by the fact that minimal effort is made on the ticket itself to draw a ticket holder's attention to the need to do one of these things in order to understand that they are agreeing to binding arbitration by using the ticket to enter Wrigley Field. The front of the ticket states, "Subject to terms/conditions set forth on reverse side." This notice is conspicuous in that it is one of only two lines of text on the front of the ticket, and it is printed in black type set against the white background of the ticket itself. However, the notice is inconspicuous in that it is printed in very small type. We take judicial notice that the court's Adobe Acrobat software indicates that the ticket template provided by the Cubs uses four-point font for this notice. And importantly, nothing about this notice draws a ticketholder's attention specifically to the fact that he or she is agreeing to give up important legal rights by using the ticket or to the need to read the terms and conditions to understand the legal rights that he or she is waiving by using the ticket.

¶ 23     The back side of the ticket is composed of six paragraphs of text and several capitalized headings using the same four-point font. These six paragraphs are not the actual terms and conditions being agreed to, but the summary of the terms and conditions. The ticket states that by using the ticket, the "ticket holder ('*Holder*') agrees to the terms and conditions available at www.cubs.com/ticketback (the *'Agreement'*)." (Emphasis in original.) Significantly, the website address is in plain type and not set apart in underlined, bolded, italicized, or different-colored type as website addresses usually are. Thus, while the words "Holder" and "Agreement" in the same sentence are emphasized, nothing draws a ticket user's attention to the separate website address that must be visited to read the full terms and conditions being agreed to.

¶ 24     Further, although many words and provisions on the back of the ticket are emphasized in bold type, in all capital letters, or with introductory words such as "WARNING," the summary pertaining to the topic of arbitration is not emphasized in any way. The summary pertaining to arbitration is in the fifth of six full paragraphs addressing various topics. It uses rather dense legal language to summarize the arbitration provision—"Any dispute/controversy/claim arising out of/relating to this license/these terms shall be resolved by binding arbitration, solely on an individual basis, in Chicago, Illinois"—while omitting any explanation that this means that a person who uses a ticket is giving up his or her legal right to a jury trial in court of any claim involving the Cubs or MLB. The brief summary on the back of the ticket also omits any indication that the full arbitration provision being agreed to on the Cubs website is a far more comprehensive, eight-paragraph arbitration provision. The summary also omits any reference to the significant fact a ticketholder has the right to opt-out of this arbitration provision if he or she mails a written opt-out notice within seven days.

¶ 25     None of these factors discussed in the preceding paragraphs appear designed to have the

effect of actually causing a reasonable consumer in the plaintiff's position to learn of and read the full arbitration provision to which he or she is purportedly assenting by using a baseball ticket to enter Wrigley Field. Instead, the totality of circumstances make this appear as more of an effort to " 'impose the onerous terms of one's carefully drawn printed document on an unsuspecting contractual partner.' " *Kinkel*, 223 Ill. 2d at 23 (quoting *Frank's Maintenance & Engineering*, 86 Ill. App. 3d at 989-90).

¶ 26   One of the procedural unconscionability factors that we find especially important in this case is " 'the manner in which the contract was entered into.' " *Id.* (quoting *Frank's Maintenance & Engineering*, 86 Ill. App. 3d at 989-90). This case is different from most cases addressing procedural unconscionability because the plaintiff here allegedly assented to this arbitration provision by her conduct. In other words, the way by which MLB and the Cubs contend that the plaintiff assented to the arbitration provision was by presenting a paper baseball ticket to be scanned so that she could gain entry into Wrigley Field to attend a Cubs game. This is not a traditional method of forming a contract, and it is not an act that would necessarily cause a reasonable consumer to realize that he or she was agreeing to the terms and conditions of a contract. Although nothing about the fact that this contract was formed through conduct preludes a finding that the plaintiff assented to arbitration (see *James v. McDonald's Corp.*, 417 F.3d 672, 677-78 (7th Cir. 2005)), we must at least be satisfied that the circumstances alerted the plaintiff to the contractual effect that her conduct would have.

¶ 27   No party directs our attention to any case involving the sufficiency or enforceability of an arbitration or similar provision included in the terms or conditions printed on or incorporated by reference into a ticket used to attend a baseball game or similar event. The plaintiff relies on *Yates v. Chicago National League Ball Club, Inc.*, 230 Ill. App. 3d 472, 487 (1992), in which this court

affirmed a trial court's evidentiary ruling that a defendant could not argue at trial that the plaintiff had contractually assumed the risk of being hit by a baseball based on his use of a ticket that had a disclaimer of liability printed on the back. However, *Yates* is inapposite to the issue before us because the basis of the trial court's ruling was that the ticket's print was so small that it could not be legibly reproduced on the photocopy submitted to the trial court. *Id. Yates* did not involve the issue of unconscionability or whether the small print prevented enforcement of the provision. The case did, however, cite to comment c of the Restatement (Second) of Torts involving the doctrine of express assumption of risk. *Id.* (citing Restatement (Second) of Torts § 496B, cmt. c, illus. 1 (1977)). While that doctrine is not involved here, the comment makes a point concerning assent that we find pertinent to this case. It states that, where a plaintiff's conduct is merely that of a recipient of a preprinted agreement drawn by the defendant (such as a ticket), it must appear that "the terms were in fact brought home to him" before he can be found to have accepted them. Restatement (Second) of Torts § 496B, cmt. c (1965). Here, as previously discussed, we cannot say that the circumstances in fact "brought home" to the plaintiff the fact that she was accepting the full arbitration agreement by her conduct of using the baseball ticket.

¶ 28    Given how the contract was formed here, this case is not the equivalent of a case involving a signed contract or an internet transaction. In cases where consumers sign contracts, courts generally hold that they are charged with knowledge of and assent to the terms and conditions of a contract they have signed. See *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 150 (2006). Thus, in *Kinkel*, relied upon by the Cubs and MLB, the arbitration provision was held not to be unconscionable—even though it was contained in the fine print of the terms and conditions on the back of a preprinted cellular service agreement filled with text—because the plaintiff had signed the contract, initialed an acknowledgement on it that she had read the terms and conditions, and

had them in her possession to read if she had chosen to do so. *Kinkel*, 223 Ill. 2d at 26. If the plaintiff had signed a contract here containing the terms and conditions at issue, that would make this a different case. But there is no contract here containing the plaintiff's signature, and she cannot be charged with having assented to the arbitration provision on that basis. Also, unlike *Kinkel*, the full terms and conditions were not in the plaintiff's possession by virtue of the paper ticket she had; rather, she was required to access the Cubs' website or visit the administrative office to read them. Imposing the need to take one of these these extra steps to ascertain the full terms and conditions being agreed to makes this more like the provision of the *Kinkel* contract directing a consumer to "request" information about arbitration costs, which the supreme court held was a degree of procedural unconscionability. *Id.* at 27.

¶ 29       Likewise, the contract here is not one associated with an internet or other electronic transaction during which a consumer has electronically clicked a button or checked a box confirming that he or she agrees to certain terms or condition as part of that electronic transaction, which courts uphold as agreements because they both give the consumer an opportunity to review the terms and conditions and require a physical manifestation of assent by the consumer. See *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 882 (N.D. Ill. 2020) (citing *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 465 (S.D.N.Y. 2017)). In cases where consumers are prompted to electronically click buttons agreeing to terms and conditions during Internet or electronic transactions, this procedure puts them on notice that their further Internet or electronic conduct is subject to the terms and conditions established by the owner of the website. If the plaintiff had done anything like that, this would be a different case. However, nothing analogous to this occurred here that required some act by the plaintiff acknowledging that her attention had been drawn to the fact that her conduct of using the ticket was an acknowledgement that she was

agreeing to the full arbitration provision in the terms and conditions.

¶ 30        MLB and the Cubs argue that this case should be treated as analogous to *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 983-84 (2005), in which the court, applying Texas law, held that the plaintiffs' act of purchasing computers through Dell's website constituted their agreement to an arbitration provision included in Dell's terms and conditions. Dell's website did not require users to click an "I accept" box to manifest assent to the terms and conditions before completing the purchase. *Id.* at 983. However, completing a purchase required the plaintiffs to complete online forms on five pages of the website, and each of those five pages contained a hyperlink to Dell's terms and conditions. *Id.* at 979. The court reasoned that the hyperlinks on the five website pages "should be treated the same as a multipage written paper contract," as the hyperlink "simply takes a person to another page of the contract, similar to turning the page of a written paper contract." *Id.* at 984. The court further found that although there was no conspicuousness requirement, "the hyperlink's contrasting blue type makes it conspicuous." *Id.* The court also recognized that the plaintiffs were not novices at computer use and knew that clicking the hyperlink would take them to the terms and conditions. *Id.* The court further relied on the fact that three of the five website pages stated that all sales were subject to Dell's terms and conditions, and it held that this statement, combined with the fact that the terms and conditions were accessible from all pages by hyperlinks, provided sufficient notice to the plaintiffs that purchasing the computers online would make the terms and conditions binding on them. *Id.*

¶ 31        MLB and the Cubs argue that the arbitration agreement here is more conspicuous than the one in *Hubbert* because arbitration is referenced on the ticket itself and not in a separate document. However, while we recognize that the ticket mentions arbitration, it does so merely as a one-sentence summary of the eight-paragraph arbitration provision available only on the Cubs' website

or at the administrative office. To read the full arbitration provision being agreed to, a ticket holder must reference a completely separate document, either by accessing the Cubs' website or by obtaining it at the administrative offices. Unlike in *Hubbert*, the paper ticket that the plaintiff was using here provided her with no ability to access the full terms and conditions being agreed to simply by clicking a hyperlink while she was already using the internet. Because of this, we cannot say in this case that the plaintiff's paper ticket "should be treated the same as a multipage written paper contract." *Id.* at 984. Also, in *Hubbert*, the hyperlink was in a contrasting blue type that made it conspicuous, whereas here the website address was printed in plain type that did nothing to draw a ticketholder's attention to its existence. *Hubbert* is further distinguishable because there, it is evident that the existence of the terms and conditions was brought to the attention of the plaintiffs by the fact that they had to read and complete online forms on five website pages in order to complete their purchases, and the terms and conditions were available from those website pages by hyperlink. There is no analogous requirement in this case that the plaintiff ever had to read her baseball ticket or the Cubs' website in order to use that ticket to enter the stadium. For all of these reasons, we find *Hubbert* to be inapposite to the facts of this case.

¶ 32      MLB and the Cubs argue in a footnote that the contract cannot be considered unenforceable merely because it is a contract of adhesion over which the plaintiff had no opportunity to negotiate the terms. They point to the supreme court's statement that "adhesive contracts 'are a fact of modern life.' " *Phoenix Insurance Co.*, 242 Ill. 2d at 72 (quoting *Kinkel*, 223 Ill. 2d at 26). To be clear, our finding that the arbitration provision is unconscionable is not based on the fact that it is imposed in a contract of adhesion or that the plaintiff had no ability to negotiate its terms. *Zobrist*, 354 Ill. App. 3d at 1148. Nor is our finding based on the use of fine print or use of legal language that is difficult to understand. *Tortoriello*, 379 Ill. App. 3d at 233. Rather, our finding is based on

the fact that there is "overreaching" that goes beyond a business merely imposing an arbitration provision on a consumer by using a contract of adhesion with fine print and legal language that the consumer might not understand. *Id.* The overreaching is the fact that the Cubs sought to bind the plaintiff, merely through her use of a baseball ticket to enter Wrigley Field, to an extensive eight-paragraph arbitration provision that was not provided to her, which she could read only by either accessing the Cubs' website (while likely being in the commotion outside the baseball stadium when she recognizes the need to do this, where it is not necessarily easy or practical to read an Internet website) or by visiting the Cubs' administrative office (despite her ticket containing no information about where that office could be found). The Cubs sought to impose this provision on her, despite the fact that the ticket did very little to draw the plaintiff's attention to the importance of accessing the website or the administrative offices to understand the comprehensive extent of the arbitration provision she was agreeing to by using the ticket or the fact that she could opt out of arbitration within seven days of the game, while simultaneously emphasizing other aspects of the summarized terms and conditions.

¶ 33     In a second footnote, MLB and the Cubs argue that the plaintiff's ticket was a license to attend the game and that the Cubs had the ability to establish terms and conditions under which the plaintiff could do so. They cite this court's decision in *Soderholm v. Chicago National League Ball Club, Inc.*, 225 Ill. App. 3d 119, 124-25 (1992), which involved the issue of what rights a season ticket holder had against the ticket seller to purchase tickets in future seasons. In rejecting the argument that the purchase of season tickets was a lease instead of a series of revocable licenses, the court stated, "Neither an individual ticket holder nor a season ticket holder is entitled to enter the ball park except upon the terms and conditions specified on the individual tickets and by defendant's policies." *Id.* at 125. MLB and the Cubs then also cite *ProCD, Inc. v. Zeidenberg*,

86 F.3d 1447, 1451 (7th Cir. 1996), for its statement that use of an airline ticket or a concert ticket is acceptance of its terms, even terms that in retrospect are disadvantageous, and they argue that the same principle applies here. However, we note that not all terms and conditions affecting the parties' legal relationship are enforceable merely because they are printed on the back of an airline ticket, concert ticket, or the like. Courts generally employ a "reasonable communicativeness" test with airline tickets or similar tickets to determine whether the ticket reasonably communicates to the passenger the existence of important terms and conditions that affect the passenger's legal rights, so as to bind the passenger to them. *Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1363-65 (9th Cir. 1987); see *Walker v. Carnival Cruise Lines, Inc.*, 383 Ill. App. 3d 129, 134 (2008) (cruise ship ticket).

¶ 34        That test first takes into account whether the physical characteristics of the ticket reasonably communicate the existence of the terms and conditions at issue, considering factors such as the conspicuousness of the clause at issue, the size of type used, the clarity of the terms, and the ease with which a passenger can read the terms at issue. *Walker*, 383 Ill. App. 3d at 134-35. These factors are similar to those that we discussed above and which led us here to conclude that nothing about the physical characteristics of the ticket here appeared designed to actually impress upon a ticketholder the importance of visiting the Cubs' website or administrative offices to read the arbitration provision to which he or she was agreeing by using the baseball ticket. *Supra* ¶¶ 22-25. Second, the reasonable communicativeness test considers whether the circumstances surrounding the passenger's purchase and retention of the ticket permitted him or her to become meaningfully informed of its contractual terms, taking into account factors such as the passenger's familiarity with tickets, the time and incentive to study the provisions of the ticket contract, and any other notice that the passenger received regarding the ticket contract provisions. *Walker*, 383 Ill. App.

3d at 134-35. In this case, the evidence is that the plaintiff had no prior familiarity with the terms or conditions of baseball tickets, and MLB and the Cubs identify nothing outside the physical ticket itself that notified the plaintiff of the arbitration provision. She was given the ticket by her father on the same day of the game, and we doubt that she can be charged with having a strong incentive to study the provisions of the contract merely to attend a baseball game. *Cf. Diero*, 816 F.2d at 1365 (airline passenger checking baggage worth a quarter million dollars charged with knowledge of contract terms due to the strong incentive he had to read ticket terms about airline's liability for checked baggage and nine days in which to do so). And, as we discussed above (*supra* ¶ 21), the hassle of needing to use a device with Internet access to visit the Cubs' website while at the commotion of the ballpark or to visit the Cubs' administrative office to read the full terms and conditions is a circumstance that gives ticketholders little realistic ability to become meaningfully informed of the full arbitration provision that they are agreeing to by using the ticket. Thus, we would not reach the conclusion here that the plaintiff's baseball ticket reasonably communicated the existence and importance of the legal rights being affected by her use of the ticket.

¶ 35    To be sure, we take no issue with the above-quoted statement in *Soderholm* or the general proposition that the Cubs can establish terms and conditions under which patrons can attend games. *Soderholm*, 225 Ill. App. 3d at 124-25. There may be ways in which the Cubs can have all persons using tickets contractually agree to binding arbitration as a term of condition of entry into the stadium, but the way in which it was done in this case is procedurally unconscionable.

¶ 36    We also reject the argument by MLB and the Cubs that, regardless of whether the plaintiff actually read the terms and conditions printed on the back of her ticket or website, she undoubtedly had ample opportunity to do so and should therefore be charged with knowledge of the ticket's terms and conditions. This argument elevates the less important issue of her ability to read the

ticket or the website over the more important question of whether the circumstances brought to the plaintiff's attention the need to do so in order to become aware of the fact that she was giving up important legal rights by using the ticket or the fact that she had the right to opt out of the arbitration provision within seven days of the game if she took certain steps. As discussed above, it does not seem that the ticket itself or other surrounding circumstances were sufficient to bring this to the plaintiff's attention. We also question how far in advance of attending a game that a person can reasonably be charged with the need to read the terms and conditions on the back of a baseball ticket, and we believe MLB and the Cubs overstate the realistic opportunity that a person has to read the full arbitration provision on a cellular phone once he or she is within the commotion of entering Wrigley Field and recognizes the need to do so. Furthermore, given that the Cubs omitted from the ticket any information that a person has the right to opt out of arbitration within seven days, this would seem to be an unreasonably short time for a person with injuries as severe as those suffered by the plaintiff to have a meaningful opportunity after the game to learn of the right to opt out of arbitration and take the actions necessary to do so.

¶ 37    Finally, MLB and the Cubs argue that even if we find that the arbitration provision is procedurally unconscionable, we should nevertheless still hold that it is enforceable. MLB and the Cubs are correct that, under Illinois law, an arbitration provision may be found to be procedurally unconscionability to some degree without it being sufficient to render the provision unenforceable. *Wigginton*, 382 Ill. App. 3d at 1194. They are also correct that there exists a policy in favor of enforcing arbitration agreements. However, this policy means only that we resolve doubts in favor of arbitrability, not that an arbitration clause can never be found unenforceable on the basis of its procedural unconscionability. *Id.* (citing *Roubik*, 181 Ill. 2d at 383). MLB and the Cubs rely on *Kinkel*, 223 Ill. 2d at 27, where the supreme court found a degree of procedural unconscionability

in the cellular service agreement signed by the plaintiff because it did not inform her that she would have to pay part of the costs of arbitration, instead stating that "fee information" was available "upon request." The court held that the degree of procedural unconscionability at issue was insufficient to render the entire provision unenforceable. *Id.* They also rely on *Bess*, 381 Ill. App. 3d at 240, in which the court held that an arbitration provision about which the plaintiff had been informed only after purchasing DirecTV services had a degree of procedural unconscionability, but not one that was sufficient to render the entire provision unenforceable. The court noted that the customer agreement that was provided to the plaintiff after her purchase of services stated that she was not bound by its terms until she had read it and continued to receive the services. *Id.* at 239. The court also stated that the customer agreement was "typical of consumer agreements for computer, credit card, and other online or catalog purchases wherein the agreements are delivered with the product or the first billing and consumers may approve or reject the terms on receipt of the agreement." *Id.* at 239-40 (citing *Kinkel*, 223 Ill. 2d at 47).

¶ 38      In this case, the way by which MLB and the Cubs sought to bind the plaintiff to the arbitration provision set forth in the full terms and conditions on the Cubs' website or at the administrative offices involved a much greater degree of procedural unconscionability than what was involved in *Kinkel* or *Bess*. Thus, we would find that this arbitration provision is unenforceable based on its procedural unconscionability alone. See *Razor*, 222 Ill. 2d at 99-100 (contract term can be invalidated on the basis of procedural unconscionability alone). However, further bolstering our conclusion of unenforceability is the fact that the arbitration provision bears a degree of substantive unconscionability. Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. *Kinkel*, 223 Ill. 2d at 28. Among the circumstances indicative of substantive unconscionability are contract terms so one-sided as to

oppress or unfairly surprise an innocent party. *Id.* We find this exists to a degree in the arbitration provision at issue, in that it allows an injured person an unreasonably short period of only seven days to opt out of arbitration and requires that a ticketholder "must" include an account number in the request to opt out. The injury suffered by the plaintiff rendered her unable to read or engage in eye-straining activity for at least seven days, and she averred that she had no account number with the Cubs in order to complete an opt-out request in any event. These additional factors support our holding that the arbitration provision at issue is unenforceable. See *Razor*, 222 Ill. 2d at 99 (a contract term can be invalidated on the basis of procedural unconscionability, substantive unconscionability, or a combination of both).

## III. CONCLUSION

For the foregoing reasons, the trial court's order, denying the motion of MLB and the Cubs to compel binding arbitration, is affirmed.

Affirmed.

---

**No. 1-20-1264**

---

| | |
|---|---|
| **Cite as:** | *Zuniga v. Major League Baseball*, 2021 IL App (1st) 201264 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-L-4684; the Hon. Kathy M. Flanagan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Rami Fakhouri and Brian Karalunas, of Goldman Ismail Tomaselli Brennan & Baum LLP, of Chicago, and R. Adam Lauridsen, Sarah Salomon, and Andrew S. Bruns, of Keker, Van Nest & Peters LLP, of San Francisco, California, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Tracy A. Brammeier, of Clifford Law Offices, P.C., of Chicago, for appellee. |

---